IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Lynn A. McAllister

                Plaintiff

v.                              Case No. 5:24-cv-04054 JAR-GEB

Tyson Fresh Meats, Inc.

                Defendants

**Plaintiff's Opposition to Motion to Dismiss**

**Tyson's Exhaustion Arguments are Frivolous**

**McAllister's Amended Charge**

Defendant Tyson knows plaintiff Lynn McAllister amended his EEOC Charge on February 13, 2023. Tyson attorneys then pretend only his original charge was filed. ECF 8, p.2. Based on this candor Tyson then proceeds down an irrelevant analysis concerning the original Charge which was filed before Tyson fired Mr. McAllister from his position and then later terminated his employment. Thus all of its exhaustion arguments are without merit as Tyson's revelation of its knowledge with this Court falls short.[1] Tyson's arguments are copy and paste from the many other cases filed in various states against Tyson regarding its one-size-fits-all vaccine mandate.[2]

---

[1] *See* attached EEOC Docket 563-2022-00710 and Amended Charge and signed in separate docket event the same day.

[2] The cases against Tyson regarding its vaccine mandate are nearly legion. The Kansas District has on its docket a recently filed case, *Newell v. Tyson Foods*, Case. No. 2:24-cv-02359-JWB-TJJ filed August 15, 2024, alleging the same Tyson lose-your-job-unpaid-leave-for-a-year vaccine mandate.

1

## Overview

Tyson created a company policy meant to deter employee protected conduct from ever occurring in the first place. Tyson pre-ordained that the moment any Tyson employee exercised his right to ask for a religious accommodation that an automatic forfeiture of the employee's pay and positions would occur – and did occur **<u>Full stop</u>**. Call it a spring-loaded gun at the door – the sword of Damocles automatically swooped down the moment Lynn McAllister made his religious accommodation request to Tyson. That is direct evidence of an adverse employment decision simply because Lynn exercised his religion asking to be accommodated. It was a "predetermined illegal punishment for requesting a religious exemption." *McNeill v. Tyson Fresh Meats, Inc.,* 2023 WL 8532408 at *7 (N.D. Texas, December 8, 2023). The "predetermined punishment" was set on autopilot even "before he asked." *Id.*

Like the other requesting Tyson employees, Mr. McAllister was also placed on the notorious LOA+ Status by Tyson on December 2, 2021 – meaning Lynn immediately lost his decades long position and was placed on this one year unpaid leave status. Lynn filed an EEOC charge on January 28, 2022, while he was still employed with Tyson. Later, in March, 2022, Tyson filled Mr. McAllister's position while he was on LOA+ status – meaning he was still technically employed – not paid but eligible to obtain employee benefits. On October 26, 2022, Tyson sent a letter to Mr. McAllister stating that in five days' time, on October 31, 2022, LOA+ status employees such as Mr. McAllister might return to work if there is a position available. But if there was no position available, the employee would be terminated. On

November 25, 2022, Tyson sent McAllister a letter stating "If you do not respond to this letter and return to work by November 25th, 2022, we will assume you do not wish to retain your Tyson employment and your employment and associated benefits will be terminated." Plaintiff was terminated because of his religious beliefs on November 21, 2022. After filing his original EEOC charge, given the later events, Mr. McAllister filed with the EEOC a "Petition to Amend Original Charge of Employer Religious Discrimination" on January 29, 2023. See EEOC docket.
 Mr. McAllister then filed "Final+EEOC+Signed+Amended+Charge+of+Discrimination+2.12.23" with 21 exhibits. *See* attached EEOC docket (p.5 docketing event). [3]

As the EEOC docket that the Tyson attorneys are very well aware of reveals, together with the Amended Charge, all of which Tyson had notice of, all of the Counts set forth by Mr. McAllister in his Complaint were administratively exhausted. The exhaustion arguments made regarding Count II, V, and VI beginning on page 4 of that motion are all frivolous and are useless make work for the Court.[4]

---

[3] The Amended *pro se* EEOC Charge has a table of contents identifying retaliation, discrimination, failure to accommodate, which all give rise to disparate treatment and disparate impact claims.

[4] And Tyson is not permitted to do an end-around to its motion by swapping horses and attacking the Amended Charge in its Reply. This would be a new issue that should not be considered. *See United States v. Murray*, 82 F.3d 361, 363 n. 3 (10th Cir.1996); *United States v. Feinberg*, 89 F.3d 333, 340-41 (7th Cir. 1996) ("reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court"). "When a moving party advances in a reply new reasons and evidence in support of its motion," courts can either grant the nonmoving party an opportunity to respond or decline to rely on the new material when deciding the motion. *Beard v. Seagate Tech., Inc.,* 145 F.3d 1159, 1164-65 (10th Cir. 1998).

*McNeill v. Tyson Fresh Meats, Inc.*, 2023 WL 8532408
(N.D. Texas, December 8, 2023)
\*
*Hayslett v. Tyson Foods, Inc.*, No. 1:22-cv-01123
(W.D. Tenn. Sept. 20, 2023)[5]

Plaintiff has stated *prima facie* cases for retaliation, disparate treatment, and disparate impact under Title VII. Tyson erroneously claims that a plaintiff cannot plead claims of retaliation and failure-to-accommodate based on the same facts. Tyson is wrong. The plaintiff in *McNeill* alleged that Tyson's unpaid leave scheme was both discriminatory and retaliatory under Title VII. *McNeill*, at \*12. And the court in *McNeill* took no issue with this approach, noting that "a realistic, drastic pay cut threat" is an adverse employment action for purposes of both a retaliation and failure-to-accommodate claim. *Id. See also Lewis v. New York City Transit Authority*, 12 F. Supp. 3d 418 (E.D.N.Y. 2014). In *Lewis* the plaintiff was a practicing Muslim who was unable, for religious reasons, to remove her khimar as required by the defendant's uniform policy. *Id.* at 427–28. The plaintiff presented evidence that this new position was less desirable in many ways. *Id.* at 429. After the plaintiff filed claims for both failure-to-accommodate and retaliation, *id.* 433–34, the district court upheld both claims on summary judgment, reasoning that a "materially adverse action in the context of Title VII's anti-retaliation provision is broader than an adverse employment action in the context of Title VII's anti-discrimination provisions." *Id.* at 450. The court then concluded that the same reasons the transfer

---

[5] Available at https://www.courtlistener.com/docket/63374753/hayslett-v-tyson-foods-inc/ docket entry 66 September 20, 2023.

could not be deemed reasonable also rendered the transfer materially adverse for the retaliation claim. *Id.*[6]

Plaintiff Lynn McAllister had sincere religious beliefs which precluded him from complying with the vaccination requirement for which he requested accommodations but was denied. The facts demonstrate that this requirement had several adverse effects to Lynn who could not consent to a COVID-19 vaccination injection for religious reasons. He immediately lost his position, placed on unpaid leave, and ultimately were terminated. That constitutes disparate impact.

Tyson's arguments ignore the elephant in the room – that Mr. McAllister is not the first employee to sue regarding Tyson's one-size-fits-all-process which Tyson and its Littler Mendelson firm knows all too well.[7] Hayslett's reasoning is supported by

---

[6] See *Allen v. Houston Indep. Sch. Dist.,* 689 F. App'x 238, 240 (5th Cir. 2017) (claims "based on the same predicate facts"); *Huge v. Boeing Co.,* No. C14-857, 2015 WL 6626568, at *11 (W.D. Wash. Oct. 30, 2015) (denying the employer's summary judgment motion because fact issues remained as to whether placing plaintiff on unpaid leave after she sought an accommodation was retaliatory and an unlawful accommodation); *McClendon-Lemman v. Tarrant Cnty. Coll.,* No. 4:21-cv-1338-P, 2022 WL 4396275, at *3 (N.D. Tex. Sept. 23, 2022) (denying motion to dismiss retaliation and discrimination claims based on same facts); *Davies By & Through Davies v. Lackawanna Cnty.*, 2018 WL 924205, at *2 (M.D. Pa. Feb. 14, 2018) ("there are claims of discrimination based on failure to accommodate Plaintiff's disability, which are factually intertwined with the retaliation claim").

[7] *See Hayslett v. Tyson Foods, Inc.,* No. 1:22-cv-01123(W.D. Tenn. Sept. 20, 2023). In *Hayslett,* Tyson Foods argued in its summary judgment memorandum that even if that plaintiff established a *prima facie* case of religious discrimination to its covid 19 vaccine mandate, that Tyson Foods "had legitimate, non-discriminatory reasons for its actions – namely, to mitigate the spread of COVID-19, and protect the community at large, including its own employees." Tyson argued it really meant well because it relied upon CDC guidance. But as Judge Anderson ruled in *Hayslett,* the motivation of *why* for Tyson's purported sincere reasons was irrelevant. Rather it was the *what* – do any of the possible accommodations place an undue hardship upon Tyson:

5

the Tenth Circuit. *DOES 1-11 v. Bd. of Regents of Univ. of Colorado,* 100 F. 4th 1251, 1280 (10th Cir. 2024) ("the Administration's motivation for the mandate itself is irrelevant. The mandate is not at issue in this case. What matters is how— and why— the Administration implemented the religious accommodations required by Title VII"). In *McNeill*, and similar to Lynn McAllister as maintenance supervisor at the Emporia, Kansas, processing plant, Christopher McNeill was subjected to the identical Covid-19 policy at Tyson's Amarillo, Texas processing plant. *McNeill* at *1. No different than Mr. McNeill, the same Tyson mandate put Lynn McAllister "between two rocks and a hard place." *McNeill* at *6 (*Rock* 1: to keep your job you must abandon your religious convictions irreversibly; and *Rock* 2: voluntary self-termination, even with the possibility of being rehired, is not a reasonable accommodation). An "employee raising a religious objection to receiving the vaccine had exactly three choices: (1) capitulate on his religious belief so to comply with the

---

But the undue burden test is not concerned with the wisdom of Defendants' vaccine mandate. The question is whether Defendants could offer an accommodation to Plaintiff without substantially increasing Defendants' costs at the Newbern plant. The inference from Defendants' evidence is that employee illnesses caused missed work, thereby impacting operations and presumably increasing Defendants' costs. How much it actually increased costs Defendants have not said. None of this proof shows how accommodating Plaintiff and any impact the accommodation had on Defendants' operations would have resulted in a substantial increase of costs to Defendants. Defendants add that Plaintiff's presence would have put other vaccinated employees at risk. Even accepting that claim as true, *Groff* made clear that adverse impact on other employees, standing alone, does not satisfy the undue burden test. *Groff,* 143 S.Ct. at 2296 ("So an accommodation's effect on co-workers may have ramifications for the conduct of the employer's business, but a court cannot stop its analysis without examining whether that further logical step is shown in a particular case").

policy; (2) accept immediate termination; or (3) accept up to one-year unpaid leave until either the policy was rescinded, the employee complied, or the leave period expired — culminating in termination." *McNeill* at *6.

Judge Kacsmaryk examined Mr. McNeill's disparate treatment claim. *Id.* at *9. Tyson claimed McNeill also did not have a sincere religious belief and suffered no adverse employment action. *Id.* at *9. Judge Kacsmaryk held McNeill had a sincere religious belief that conflicted with Tyson's vaccine mandate and then examined Tyson's claim there was no adverse employment action. *Id.* at *12. The *McNeill* court made short work of this claim: "the leave of absence scheme amounted to a realistic, drastic pay cut threat such that it was an adverse employment action." *Id.*[8] "Being placed on indefinite unpaid leave because your employer doesn't like your religious beliefs is obviously an adverse employment action and an actionable claim under Title VII…. and an offer of voluntary self-termination with the possibility of being rehired is not a reasonable accommodation." *Id.* at *4 (cleaned up).

As to a causal link, Tyson put into play automatic retaliatory responses to a religious accommodation request: a promise that Lynn would forfeit his job with a significant pay cut. "Here, Plaintiff alleges retaliation because he requested a religious accommodation from a company policy, received a credible threat of a substantial pay cut if he did not comply with the policy, and that threat was directly

---

[8] "Defendant responded to Plaintiff's request for accommodation with an offer to reduce his pay completely for up to one year and then – if Plaintiff had not complied with the policy or Defendant had not rescinded the policy – he would then be terminated. His alternative options were immediate termination or compliance with the objected-to policy contrary to his religious belief. Thus, Plaintiff has alleged that he suffered an adverse employment action." *McNeill at* *12.

7

related to his accommodation request" *Id.* at *4. It was a "predetermined illegal punishment for requesting a religious exemption." *McNeill* at *7. Tyson never considered other reasonable accommodation possibilities. "Tyson's accommodation framework was merely a 'rubber stamp' denial – or constructive denial – is not unfamiliar." *McNeill* at *7 (citing *U.S. Navy SEALs 1-26 v. Biden*, 578 F.Supp.3d 822, 835 (N.D. Tex. 2022) ("Navy provides a religious accommodation process, but by all accounts, it is theater" and "merely rubber stamps each denial").

**Lynn Has Sincere Religious Beliefs That Conflicted With Tyson's Vaccine Mandate**

Tyson claims paragraph 138 of the Complaint is insufficient to state Lynn's religious beliefs. Courts have held that a plaintiff sufficiently pleads the first element of a failure to accommodate religious beliefs claim when the COVID-19 vaccine objection is based on a religious belief regarding the use of aborted fetal cells. *See Collins v. Tyson Foods, Inc.*, No. 22-cv-00076, 2023 WL 2731047, at *7 (W.D. Ky. Mar. 30, 2023) (plaintiff established a prima facie case by simply identifying as a Christian who opposed the COVID-19 vaccine due to the use of fetal cell tissue);[9] *Ellison v. Inova Health Care Servs.*, No. 123CV00132MSNLRV, 2023 WL 6038016, at *6 (E.D. Va. Sept. 14, 2023) (plaintiff adequately linked objection to the COVID-19 vaccine to a sincerely held religious belief by alleging he had a "sincerely held religious belief in the sanctity of human life and that—because he sincerely believe[d] the use of these

---

[9] *Collins* also held that this plaintiff employee had stated a Title VII failure to accommodate claim based on Tyson's proposed accommodation for unvaccinated workers to take one year of unprotected, unpaid leave and possibly return to their positions only if they become immunized, which a jury could find was not a reasonable accommodation for plaintiff's religious beliefs.

8

bodily remains renders these vaccines unclean," — he could not comply with the policy for that reason"). *See McNeill* at *10 (Plaintiff plausibly alleged a religious belief conflicting with COVID-19 vaccine requirement because he asserted that "his God given blood is the only immune system [he] or [his] children need, and accordingly believes taking any vaccine is against my faith, my God"). This is also what Lynn stated as his religious beliefs in his Amended EEOC charge.

Tyson points to the allegations in the Complaint about the scientific misinformation and falsities of Tyson's rationale – but this is not alleged as Lynn's reasons for his refusing to consent to the vaccine. Rather, it demonstrates the illegitimate sham pretextual nature of Tyson's purported rational in imposing what it claimed were scientific reasons for its vaccine mandate. There wasn't a legitimate reason for Lynn to lose his position and be placed on unpaid leave – then terminated.

### Tyson Misstates the Adverse Employment Requirement

Requesting a religious accommodation and contesting the denial is protected activity.[10] Lynn McAllister was subjected to several adverse employment actions.[11] The moment Tyson changed the terms of his employment, coupled with the mandate's

---

[10] EEOC Compliance Manual § 12-V-B ("EEOC has taken the position that requesting religious accommodation is protected activity"); *McNeill* at *5 ("requesting religious accommodation is protected activity as is opposing an allegedly unlawful denial of a religious accommodation").

[11] An "adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment." *Cole v. Grp. Health Plan, Inc.,* No. 23-3050, 2024 WL 3217580, at *2 (8th Cir. June 28, 2024) (abrogating prior requirements of "significant," "material" or "serious." (quoting *Muldrow v. City of St. Louis,* 144 S. Ct. 967 n.2 (2024)) (*Muldrow* (abrogating *Daniels v. United Parcel Serv., Inc.,* 701 F.3d 620 (10th Cir. 2012) and *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527 (10th Cir. 1998)).

automatic penalty of forfeiture of his salaried position (then placed on unpaid leave) if he chose to keep his religious convictions, this constituted multiple adverse actions. Tyson's mandate "placed the Plaintiff between two rocks and a hard place" with only three choices. *Tyson* at *6.

As to a causal link, Tyson put into play automatic retaliatory responses to a religious accommodation request: a promise that Lynn would forfeit his job with a significant pay cut. It was a "predetermined illegal punishment for requesting a religious exemption." *McNeill* at *7. Tyson never considered other reasonable accommodation possibilities. "[Tyson's] accommodation framework was merely a 'rubber stamp' denial – or constructive denial – is not unfamiliar." *McNeill* at *7 (citing *U.S. Navy SEALs 1-26 v. Biden*, 578 F.Supp.3d 822, 835 (N.D. Tex. 2022) ("Navy provides a religious accommodation process, but by all accounts, it is theater" and "merely rubber stamps each denial").

### A Disability Discrimination Claim is Stated

In disregard of the Complaint allegations – and the actual letter from Tyson – Tyson claims "Plaintiff's Complaint lacks factual allegations to support the notion that Tyson perceived or regarded him as disabled." ECF 8, p.6. But the Complaint plainly recites what Vice President Hithon literally said – that a disability request was granted on September 17, 2021, even before Lynn made a religious accommodation request on October 1, 2021. At paragraph 137 it states:

> On September 17, 2021, Lola Hithon, Vice President, Employee Relations and Compliance for Tyson Foods Inc, stated to Mr. McAllister that "this letter confirms that your request for a disability or religious accommodation from Tyson's mandatory vaccination requirement has been granted and will begin on October 1,

> 2021 for corporate team members and on November l, 2021 for plant team members. Because the pandemic raises complex medical and scientific issues, the status of the accommodation is subject to change.

Hithon's letter is snapshot within the Complaint. This disability accommodation came before the October 1, 2021, accommodation request of Lynn. *Harmon v. Sprint United Management Corp.*, 264 F. Supp. 2d 964, 970 (D. Kan. 2003) supports the plaintiff's regarded as disability claim. The Complaint shows Lynn was regarded as having a disability, Tyson had notice, and then shows Lynn suffered several adverse employment decisions including being terminated. A person is "regarded as" disabled when (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1219 (10th Cir. 2010). In either case, the focus of the court is on an employer's subjective state of mind. *Justice v. Crown Cork and Seal Co., Inc.,* 527 F.3d 1080, 1086 (10th Cir. 2008).

Tyson's state of mind is on display at paragraph 137 and its letter. Tyson removed Lynn from his job and placed him on unpaid leave. Lynn was terminated as not comparable paying jobs were offered. Plaintiff has demonstrated that Tyson regarded Lynn as significantly restricted in performing either (1) a class of jobs; or (2) a broad range of jobs in various classes. *See EEOC v. Heartway Corp.,* 466 F.3d 1156, 1163 (10th Cir. 2006) ("must be sufficient evidence that the employer subjectively believed the employee to be significantly restricted as to a class of jobs or

11

broad range of jobs in various classes").

Ms. Hithon, as Vice President of Employee Relations and Compliance, was certainly a decisionmaker for Tyson. *See Rakity v. Dillon Cos.,* 302 F.3d 1152, 1163 (10th Cir. 2002) (views of the decision maker are considered in determining whether the employer regarded the employee as disabled). Ms. Hithon clearly had notice and Tyson would not have granted a disability accommodation to Lynn unless it recognized Lynn having a disability under its ADA policy. Moreover, when Tyson terminated Lynn's employment, it again provided a one size fits all generic letter. Tyson never stated the actual reason. Rather, it gave four conflicting and inconsistent reasons[12] – none of which Tyson actually says was the actual reason. *See* Complaint, para. 132.

Under Tyson's one-size-fits-all policy there was nothing left to decide once Lynn McAllister exercised his right to an accommodation. It had all been preprogrammed on autopilot with one destination: lost pay and job. Tyson was merely there to herd each requestor, like cattle down to the Purgatory holding chute, all the while offering false hopes like wine mixed with gall on a sponge, adding insult to injury to Lynn awaiting (unknown to him) the certain executioner's spring-loaded head shot to his Tyson career. And the illusion was certainly orchestrated on a premediated basis. Tyson carried through with its theatrics giving the wholly false impression that it was actually considering Lynn's requests individually, on a case by case basis, when his fate, like every other requesting Tyson employee, had already

---

[12] *e.g.* "A same or like position was not available" and "the same, or like position was available, and you refused the offered position." Para. 132.

been sealed before the first act of this cruel theatre even began. The fix was in from before the beginning –it was all theatre.

The plaintiff exhausted his EEOC claims which are set forth in his Complaint. The plaintiff states claims under Count I. The Tenth Circuit does not hold that liability can never attach for failure to engage in the interactive process. It can when it is shown there were other possible accommodations. *See Lincoln v. BNSF Ry. Co.,* 900 F.3d 1166, 1207 n.29 (10th Cir. 2018). *See Fjellestad v. Pizza Hut of Am., Inc.,* 188 F.3d 944, 952 (8th Cir.1999) (only if no reasonable accommodation was possible can employer escape liability for failing to engage in an interactive process). "When the employer fails to engage in the interactive process, it is not likely that an employer will be able to establish on summary judgment the absence of a disputed fact as to the existence of a reasonable accommodation." *Valdez v. McGill*, 462 F. App'x 814, 819 n.5 (10th Cir. 2012). Tyson's one size fits all preprogrammed outcome was no accommodation process at all but a "predetermined illegal punishment for requesting a religious exemption." *McNeill* at *7. An employer who "determines what accommodation it is willing to offer before ever speaking with" the employee does not participate in good faith. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018); *Lowe v. Calsonickansei N. Am., Inc.,* 2020 WL 2473757, at *8 (M.D. Tenn. May 13, 2020).

*Groff v. DeJoy,* 600 U.S. 447 (2023) now requires an employer to prove that the burden of accommodation "is substantial in the overall context of an employer's business." As *Hebrew v. Texas Dep't of Criminal Justice,* 80 F.4th 717 (5th Cir. 2023)

13

noted, "this is a heavy burden." *Id*. at 722. *Groff* "suggests that, all other things being equal, larger businesses and institutions must bear a heavier burden in proving undue hardship." *Hebrew* at 725, fn*. *See Hebrew at* 722 ("If a requested accommodation poses an undue hardship, the employer must *sua sponte* consider other possible accommodations….Only after thorough consideration of other options may the employer deny the employee's request for accommodation"). *See Smith v. City of Mesa*, No. CV-21-01012-PHX-DJH, 2023 WL 2463819, at *5 (D. Ariz. Mar.10, 2023) (employer must "demonstrate that any and all other potentially accommodations…would have imposed undue hardship"); *DeVore v. Univ. of Kentucky Bd. of Trustees,* No. 522CV00186GFVTEBA, 2023 WL 6150773, at *4 (E.D. Ky. Sept. 20, 2023) (employers must show "that any accommodation" would impose undue hardship); *Floyd v. Trinity Central Home Health, LLC,* No. 6:22-cv-061172024 WL 3653055 (W.D. Ark. Aug. 5, 2024); *U.S. v. Department of Corrections & Rehabilitation*, No. 2:24-cv-00925, LEXIS 109106; 2024 WL 3088654 (E.D. Cal. June 20, 2024) (same).

Thus Count I is viable when the plaintiff also shows the employer did not consider all possible accommodations. *See Smith v. Midland Brake, Inc., 180* F.3d 1154, 1174 (10th Cir. 1999) (failure to fulfill its interactive obligations is not viable pathway of recovery "unless he can also show that a reasonable accommodation was possible and would have led to a reassignment position"). Plaintiff has demonstrated this.

## Conclusion

1. Plaintiff has exhausted his administrative remedies for all claims.
2. Tyson did not *sua sponte* consider every possible accommodation. There was no interactive process and none regarding every possible accommodation.
3. Plaintiff states a prima facie case for retaliation.
a. *Plaintiff engaged in a protected activity.*
b. *Plaintiff was subjected to several adverse employment actions.*
c. *There is a sufficient link nexus between the protected activity and adverse action.*
4. Plaintiff states a prima facie case for religious discrimination (disparate treatment and impact).
a. *Plaintiff pleads a sincere religious belief reflecting an honest conviction.*
b. *Plaintiff pleads several adverse employment actions.*
5. Plaintiff pleads a disability claim.
a. *Tyson granted a disability accommodation.*
b. *Tyson removed plaintiff from his position.*
c. *Tyson placed him on unpaid leave.*
d. *Tyson offered no comparable position with the same pay – which could mean Tyson considered there was no class of jobs plaintiff could meet the job requirements.*

The defendant Tyson Fresh Meats motion to dismiss should be denied.

By:/s/Linus L. Baker
Linus L. Baker KS 18197
6732 West 185th Terrace
Stilwell, Kansas 66085-8922
913.486.3913
913.232.8734 (fax)
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

## Certificate of Service

The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.

/s/Linus L. Baker
Attorney for the plaintiff