IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LYNN A. MCALLISTER,

      Plaintiff,

      v.

TYSON FRESH MEATS, INC.,

      Defendant.

Case No. 24-4054-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiff Lynn McAllister worked for over thirty years with Defendant Tyson Fresh Meats, Inc. In August 2021, Defendant announced that it would require all employees, including Plaintiff, to be vaccinated as a condition for in-person employment at its Emporia beef-processing plant. Plaintiff requested an accommodation from that policy. Defendant then placed him on Leave of Absence Plus ("LOA+")—that is, one year of unpaid leave with continued health benefits. Defendant later terminated Plaintiff. Plaintiff brings various claims under Title VII, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. Before the Court is Defendant's Motion to Dismiss (Doc. 7) and Plaintiff's Motion for Leave to File Sur-Reply (Doc. 12). The motions are fully briefed, and the Court is prepared to rule. The Court denies Plaintiff's motion to file a surreply, and the Court grants in part and denies in part Defendant's motion to dismiss.

**I.    Motion to File Sur-Reply**

Plaintiff moves the Court to permit him to file a surreply. D. Kan. Local Rule 7.1(a) and (c) recognize only an opening brief, a response brief, and a reply brief. Sur-replies are

disfavored.[1] So although a Court may permit a surreply, the requesting party must demonstrate some "rare circumstance[]"[2] that justifies the surreply, such as the "movant *improperly* rais[ing] new arguments in a reply."[3] But it is not improper for a movant to respond in its reply brief to an argument in an opposing party's brief.[4] Plaintiff claims that Defendant raises new arguments in its reply brief because it argues that Plaintiff's Amended Charge fails to exhaust some of his claims, an argument not made in Defendant's opening brief (Defendant's opening brief only addresses the Original Charge). But even so, Defendant makes that argument *in response* to Plaintiff's own argument that the Amended Charge adequately exhausted his remedies. Thus, Defendant does exactly what is expected in a reply brief: it replies to Plaintiff's arguments.[5] Because Defendant does not improperly raise a new argument in its reply brief, Plaintiff has failed to show some rare circumstance that would justify a surreply. The Court therefore denies his motion for leave to file a surreply.

## II. Motion to Dismiss

### A. Standard

To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[6]

---

[1] *Vulcan Materials Co. v. Atofina Chems. Inc.*, 355 F. Supp. 2d 1214, 1246 (D. Kan. 2005).

[2] *King v. Knoll*, 399 F. Supp. 2d. 1169, 1174 (D. Kan. 2005) (internal quotation marks omitted) (quoting *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1341 (D. Kan. 1997)).

[3] *Id.* (emphasis added).

[4] *See Atl. Specialty Ins. Co. v. Blue Cross & Blue Shield of Kan, Inc.*, No. 18-2371, 2022 WL 457787, at *5 n.5 (D. Kan. Feb. 15, 2022).

[5] Plaintiff apparently anticipated that Defendant would make this argument but chose not to take the opportunity to address it. He pointed out in his response that "Tyson is not permitted to do an end-around to its motion by swapping horses and attacking the Amended Charge in its Reply." Doc. 10 at 3 n.4. Given that he anticipated the argument and had the opportunity to address it, there is even less reason to allow a sur-reply.

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

and must include "enough facts to state a claim for relief that is plausible on its face."[7]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[8]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully" but requires more than "a sheer possibility."[9]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[10]  The court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proved.[11]  Finally, the court must "draw all reasonable inferences" in Plaintiff's favor.[12]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[13]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[14]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[15]  "A claim has facial plausibility when the plaintiff pleads factual content

---

[7] *Id*. at 570.

[8] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[10] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[11] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[12] *Brooks v. Mentor Worldwide, Inc.*, 985 F.3d 1272, 1281 (10th Cir. 2021).

[13] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[14] *Id*. at 678–79.

[15] *Id*. at 679.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]

If matters outside the pleadings are reviewed, the Court generally must convert a Rule 12(b)(6) motion to a Fed. R. Civ. P. 56 motion for summary judgment.[17] However, the Court may consider documents that are attached as exhibits to the complaint,[18] or documents that are referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.[19]

Plaintiff embedded copies of letters and other correspondence in his complaint. Because these "cop[ies] of a written instrument" are incorporated into the complaint, they are "a part of the pleading for all purposes" and thus not outside the pleadings.[20]

Both parties attach documents to their briefs on the motion to dismiss. Defendant attached Plaintiff's Original Charge to its opening brief,[21] and Plaintiff attached his Amended Charge to his response brief.[22] Plaintiff referenced both documents in his Complaint,[23] and they are central to his claim because filing the charges is a prerequisite to bringing his claims.[24] Neither party disputes their authenticity. Therefore, the Court may consider each charge without converting this motion to dismiss into one for summary judgment.

---

[16] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[17] Fed. R. Civ. P. 12(d).

[18] *Id.* 10(c).

[19] *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[20] Fed. R. Civ. P. 10(c).

[21] Doc. 8-1.

[22] Doc. 10-2.

[23] Doc. 1 ¶¶ 8, 9.

[24] *See Fulbright v. Water Sys. Eng'g, Inc.*, 21-2191, 2021 WL 5161756, at *2 (D. Kan. Nov. 5, 2021) (finding right-to-sue letter "central to plaintiff's claims").

Plaintiff also attaches two other exhibits: the docket from the Equal Employment Opportunity Commission ("EEOC") and the opinion from *McNeill v. Tyson*.[25] Neither of these are "matters outside the pleading" that trigger conversion under Rule 12(d). Matters outside the pleading encompass "written or oral evidence . . . [that] does not merely reiterate what is said in the pleadings."[26] The judicial opinion is not offered as substantive evidence but rather as support for Plaintiff's legal arguments. The portions of the EEOC docket identified by Plaintiff merely reiterate the fact that Plaintiff filed his Amended Charge and the date he did so. Both those facts are already alleged in his Complaint.[27] Neither exhibit, therefore, is a matter outside the pleadings, and neither requires conversion of the motion.[28]

### B.     Background

The following facts are alleged in the Complaint or are part of the exhibits attached to each party's briefs.[29]

Plaintiff began work for Defendant in 1999 and, at the time of his termination, was employed as a Senior Facility Engineer in Defendant's Emporia plant. In response to the Covid-19 pandemic, Defendant instituted a vaccine mandate in August 2021, which required its

---

[25] No. 23-CV-041, 2023 WL 8532408 (N.D. Tex. Dec. 8, 2023).

[26] 5C Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1366 (4th ed. 2024).

[27] Doc. 1 ¶ 9.

[28] Even if these were matters outside the pleadings, the Court would exercise its discretion to exclude them because they are not helpful to deciding the motion to dismiss. Fed. R. Civ. P. 12(d); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings.").

[29] Plaintiff makes a handful of new factual assertions in his response to the motion to dismiss. Because these factual assertions are consistent with the facts and theories that Plaintiff advances in his Complaint, the Court may consider them. *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001); *see also Rathburn v. Montoya*, 628 F. App'x 988, 992 (10th Cir. 2015); *Cavlovic v. J.C. Penney Corp., Inc.*, No. 17-2042, 2018 WL 2926433, at *2 n.19 (D. Kan. June 7, 2018). When a factual allegation comes from the brief, the Court so notes.

employees to become fully vaccinated as a condition of employment.[30]  Defendant identified the vaccine as a "necessary and effective measure to protect its workforce and contribute to the worldwide effort to combat the Covid-19 pandemic."[31]  Defendant further noted that failure to become fully vaccinated would "be treated as an involuntary termination" unless the employee secured a "medical or religious exemption." [32]  And if an employee desired a medical or religious exemption, the employee was instructed to contact the HR department.

As instructed, Plaintiff requested an exemption from the vaccine mandate.[33]  On September 17, 2021, Plaintiff received a letter from Defendant, "confirming that [his] request for a disability or religious accommodation . . . ha[d] been granted."[34]  The letter further explained that the accommodation would be LOA+—a one-year unpaid leave of absence with continuation of health benefits.  Plaintiff's LOA+ would begin November 1.  The letter further noted that if the Covid-19 pandemic abated, Plaintiff may be allowed "to return to work" and would be notified if that option became available for him.

After receiving the letter, Plaintiff sent several communications to Defendant.  First, he submitted to Defendant test results showing that Plaintiff possessed "'very high levels of antibody' to the Covid virus."[35]  Second, he asked Defendant a host of questions about the vaccine and Defendant's decision to require vaccination.[36]  Defendant did not offer substantive

---

[30] An employee was considered fully vaccinated two weeks after receiving the final dose of the vaccine. Doc. 1 ¶ 62.

[31] *Id.* ¶ 38.

[32] *Id.* ¶ 115.

[33] Plaintiff does not allege the specific date that he requested an exemption.

[34] Doc. 1 ¶ 137

[35] *Id.* ¶ 59.

[36] The content of these questions is varied and generally not relevant to the merits of the motion to dismiss. *See, e.g.*, *id.* ¶ 119 ("Can you please confirm that I will not be under any duress from [Defendant] as my employer, in compliance with the Nuremberg Code?").

6

responses to these questions. Third, Plaintiff reiterated to Defendant his reason for the accommodation: "As a Christian, I believe it is immoral for any institution . . . to base . . . employment on receiving a medication derived from an abortion."[37] He further explained that "[a]ll three . . . (Covid 19) injections were developed for research and produced from aborted fetal cell lines."[38] Shortly after that communication, Plaintiff was informed that his "last work day would be October 31, 2021."[39] Defendant then placed Plaintiff on LOA+ starting November 1. Plaintiff filed his Original Charge with the EEOC on January 28, 2022, to challenge his placement on LOA+ status.

Eventually, given the abatement of the Covid-19 pandemic, Defendant decided in October 2022[40] to invite employees on LOA+ to return to work, "subject to the availability of a position" that the employee was "qualified to perform."[41] Defendant, however, terminated Plaintiff in November. In a letter to Plaintiff, Defendant explained that he was terminated for one of the following reasons: (1) he "did not contact Human Resources within the specified timeframe . . . to indicate [his] intent to return" from LOA+, (2) "[a] same or like position was not available," (3) "[t]he same, or a like, position was available, and [he] refused the offered position," or (4) "[he was] not able to return to the offered position within the required timeframe."[42] Plaintiff alleges, however, that these are "sham" reasons; Defendant in fact terminated him "because of his refusal of medical treatment status [complying with vaccination

---

[37] *Id.* ¶ 138.

[38] *Id.*

[39] *Id.* ¶ 139.

[40] Plaintiff alleges the date that the letter was sent in his response to the motion to dismiss. Doc. 10 at 2.

[41] Doc. 1 ¶ 132.

[42] *Id.*

7

requirement]" and his religious beliefs and "as a result of his request for a religious exemption."[43]

Following his termination, Plaintiff filed the Amended Charge with the EEOC on February 8, 2024, and he received his notice of his right to sue in May 2024. He filed this suit on June 21, 2024.

### C. Discussion

Plaintiff brings six claims: Bad Faith Deceptive Interactive Process (Count I), Failure to Accommodate under the ADA and Rehabilitation Act (Count II), "Religious Discrimination – Disparate Treatment" (Count III), "Religious Discrimination – Failure to Accommodate" (Count IV), "Religious Discrimination – Retaliation" (Count V), and "Religious Discrimination— Disparate Impact" (Count VI). Defendant makes three arguments in its motion to dismiss: (1) Plaintiff has failed to exhaust his administrative remedies on Claims II, IV, and VI; (2) Plaintiff has failed to state a claim on Claim I because Title VII does not support a stand alone claim for "bad faith deceptive interactive process"; and (3) Plaintiff has failed to state a claim on Counts III, IV, and V because he has failed to sufficiently plead them.

#### 1. Failure to Exhaust (Counts II and VI)

To exhaust administrative remedies, a plaintiff must file a charge of discrimination with either the EEOC or an authorized state agency and receive a right-to-sue letter based on that charge.[44] The Court must liberally construe the administrative charge to determine whether a particular claim has been exhausted.[45] The inquiry "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of

---

[43] *Id.* ¶¶ 133, 240.

[44] *See* 42 U.S.C. § 2000e(5)(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

[45] *Jones v. United Postal Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

discrimination submitted to the EEOC."[46]  Although failure to exhaust is an affirmative defense,[47] the court can decide a motion to dismiss for failure to exhaust when "the grounds for the defense appear on the face of the complaint."[48]

Plaintiff's Amended Charge is extensive—89 pages.[49]  But in that 89 pages, Plaintiff never discusses having a disability or even Defendant's perception that he is disabled.  Neither the ADA nor Rehabilitation Act is mentioned, and no reference to disability discrimination appears in the Amended Charge.  Instead, the Amended Charge revolves almost entirely around religious discrimination.  The Amended Charge is replete with references to Plaintiff's religious beliefs.  For example, Plaintiff describes that the charge is brought for "Biblical religious discrimination."  Without any reference to Plaintiff having a disability or Defendant perceiving him as disabled it is not reasonable to expect that the administrative investigation would include disability discrimination.[50]  Plaintiff has thus failed to exhaust his administrative remedies on the disability claim.

---

[46] *Delsa Brooke Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020) (internal quotation marks omitted) (quoting *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018)).

[47] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

[48] *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).  As noted above, the Court can consider the Amended Charge because it is referenced in Plaintiff's complaint, it is essential to Plaintiff's claim, and its authenticity is not disputed.  *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[49] Defendant originally argued that Plaintiff's Amended Charge did not satisfy the statutory and regulatory requirements of a charge, *see* 42 U.S.C. § 2000e-5(b) (requiring a charge to be "under oath or affirmation") and 29 C.F.R. § 1601.12(b) (requiring charge to be "signed and . . . verified"), but Defendant has now conceded that the Amended Charges satisfies those requirements.  Doc. 13 at 2.  Defendant still maintains that it was not served with the Amended Charge.  *Id.*  That may be, but on this Rule 12(b)(6) motion, the Court looks to the Complaint and draws all reasonable inferences in Plaintiff's favor.  *Brooks v. Mentor Worldwide, Inc.*, 985 F.3d 1272, 1281 (10th Cir. 2021.  The Court finds that it is reasonable to infer from Plaintiff's filing the Amended Charge and its entry on the EEOC docket that Defendant was served with the Amended Charge.

[50] *See Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007), *overruled on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018) (holding that disability claim arose from EEOC Charge, despite discrimination not being checked as basis, because "text of the charge clearly sets forth the basis of the claim"); *see also Kear v. Kohl's Dept. Stores, Inc.*, No. 12-CV-1235, 2013 WL 424881, at *3 (D. Kan. Feb. 4, 2013) (holding plaintiff failed to exhaust where "Plaintiff['s charge] does not mention retaliation or even allude to the retaliatory conduct").

Similarly for his disparate-impact claim, the Amended Charge does not include allegations that could be reasonably expected to lead to an investigation into a religious disparate-impact claim. First, the Amended Charge makes no mention of disparate impact. Second, although it is true that the Amended Charge discusses Defendant's LOA+ accommodation policy, that fact—standing alone—would not put Defendant on notice of a disparate-impact claim. Finally, the Amended Charge is completely silent on the how Defendant's vaccine policy affects other religious employees—let alone similarly situated nonreligious employees. In short, the Amended Charge includes none of the indicia of a disparate-impact claim that would make Defendant reasonably expect an investigation for a disparate-impact claim. Because an investigation of disability discrimination or disparate impact could not be reasonably expected to follow from Plaintiff's Amended Charge, Plaintiff has failed to exhaust on those claims. The Court dismisses Counts II and VI for failure to exhaust.

### 2. Bad Faith Deceptive Interactive Process (Count I)

Plaintiff brings a stand-alone claim for "bad faith deceptive interactive process" under Title VII. Although the parties offer no Tenth Circuit precedent (and the Court finds none) that recognizes an independent claim for a failure to engage in an interactive process under Title VII, Circuit precedent nevertheless strongly suggests that Title VII does not support an independent claim. The Tenth Circuit has addressed this issue in a nearly identical context—for failure-to-accommodate claims under the ADA—and concluded that no independent claim exists for a failure to engage in an interactive process.[51] And as the Tenth Circuit has instructed, "[J]urisprudence under the ADA can provide guidance as to when an employer's duty to provide

---

[51] *Brigham v. Frontier Airlines, Inc.*, 57 F.4th 1194, 1201 (10th Cir. 2023) ("But the failure to engage in an interactive process is not independently actionable under the [ADA]. So [defendant] can't incur liability solely for a failure to engage in an interactive process." (internal citations omitted)).

10

a reasonable religious accommodation is triggered under Title VII."[52]  The Court follows that instruction here to conclude that Title VII does not support an independent cause of action for failure to engage in an interactive process.

Even so, the failure to engage in an interactive process may still be a component of a failure-to-accommodate claim.[53]  Often, the interactive process will bear on the reasonableness of an accommodation.  So, although Plaintiff's allegations that Defendant did not engage in a good-faith interactive process do not state an independent claim, they may nevertheless bear on his failure-to-accommodate claim.  The Court therefore dismisses "bad faith deceptive interactive process" as a stand-alone claim.

### 3. Failure to State a Claim (Counts III, IV, and V)

Plaintiff brings claims for "Religion—Disparate Treatment" (Count III), "Religion—Failure to Accommodate" (Count IV), and "Religion—Retaliation" (Count V).  To survive a Rule 12(b)(6) motion, Plaintiff need not "conclusively establish a prima facie case" on their Title VII claim;[54] instead, Plaintiff must "plausibly allege" his claims under Title VII.[55]  The Tenth Circuit has recently elaborated on the showing that a Title VII plaintiff must make to survive a motion to dismiss by explaining how *McDonnell Douglas*'s prima-facie-case analysis and the plausibility standard interact.  In *McNellis v. Douglas County School District*, the Circuit explained that the showing required at the Rule 12(b)(6) stage depends on whether Plaintiff

---

[52] *EEOC v. Abercrombie & Fitch Stores, Inc.*, 731 F.3d 1106, 1141 (10th Cir. 2013) (citing *Thomas*, 225 F.3d at 1155 & nn.5–6), *rev'd on other grounds*, 575 U.S. 768 (2015).

[53] *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 n.5 (10th Cir. 2000) (describing the requirement of an interactive process under Title VII as "inherent in the statutory obligation to offer a reasonable accommodation" (internal quotation marks omitted) (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999))).

[54] *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019).

[55] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024).

attempts to allege a Title VII claim with direct or circumstantial evidence. If direct evidence, then plaintiff must allege facts that, "if believed," show [the] existence of [a] fact without inference or presumption."[56] If circumstantial evidence (which will often be the case in Title VII cases),[57] the plaintiff must "plausibly alleg[e] . . . a prima facie discrimination claim,"[58] and the Court "turn[s] to the elements of [plaintiff's] discrimination claims" to determine "whether the complaint sufficiently states those elements."[59] *McNellis* treated retaliation claims in the same way because they too rely either on direct or circumstantial evidence to allege a claim.[60] Thus, because the plaintiff in that case relied on circumstantial evidence to allege a retaliation claim, the court analyzed whether plaintiff alleged a prima facie case of retaliation.[61] Extrapolating from *McNellis*, the Court also concludes that to state a claim for failure to accommodate Plaintiff must allege facts that support a prima facie case because failure-accommodate-claims also rely on direct–circumstantial evidence distinction and employ the *McDonnell Douglas* burden-shifting approach.[62] *McNellis*'s instruction therefore applies to all of Plaintiff's Title VII claims.

---

[56] *Id.* (alterations in original) (quoting *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999)). Plaintiff does not make any direct-evidence argument, and the Court identifies no allegations that are direct evidence of discrimination. The Court therefore does not address this alternative pathway to making a Title VII claim. *See id.* at 1142 n.14.

[57] *Id.* (quoting *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008) ("Usually . . . a plaintiff will not have direct evidence of discrimination and will establish her claims through circumstantial evidence . . . .")).

[58] *Id.*

[59] *Id.* at 1139.

[60] *McNellis*, 116 F.4th at 1142 n.14 (applying same direct-or-circumstantial-evidence framework to Title VII retaliation).

[61] *Id.* at 1142.

[62] *See, e.g*, *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000) (applying to failure to accommodate claim "the familiar burden shifting approach set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

### a) Discrimination

To state a prima facie prima facie case of discrimination under Title VII, a plaintiff must allege "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) the challenged action occurred under circumstances giving rise to an inference of discrimination."[63] As stated above, Plaintiff has alleged that he is a Christian and that he was placed on LOA+ and terminated in November 2022. Each of these is an adverse employment action. Under the Supreme Court's recently articulated standard for an adverse employment action in *Muldrow v. City of St. Louis*,[64] to allege an actionable adverse employment action, a Title VII plaintiff need only show "some harm respecting an identifiable term or condition of employment."[65] Being placed on LOA+ status entailed a change to Plaintiff's terms or conditions of employment: one year of unpaid leave with paid-for health benefits.[66] That change in pay is a harm respecting Plaintiff's terms of employment because it diminished the compensation he received. And if being placed on unpaid leave is an adverse employment action, then termination is, *a fortiorari*, an adverse employment action because it ended Plaintiff's employment.[67]

---

[63] *Id.* at 1139 (internal quotation marks omitted) (quoting *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015)).

[64] *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).

[65] *Muldrow* involved a plaintiff's challenge to a discriminatory transfer. Courts have grappled with deciding whether *Muldrow* should apply outside the transfer context, and if so, to which Title VII claims. *See, e.g.*, *Russell v. Wormuth*, No. 22-4035, 2024 WL 4707958, at *8 n.6 (D. Kan. Nov. 7, 2024). The Tenth Circuit has yet to enter the fray. But the answer to that question would make little difference in this case because both adverse actions at issue here would satisfy even the more stringent "significant harm" test rejected by *Muldrow*. Zeroing out an employee's salary and termination would constitute significant changes in employment terms and conditions. *Freppon v. City of Chandler*, 528 F. App'x 892, 902 (10th Cir. 2013) (unpaid leave); *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (termination).

[66] *See, e.g., Haskew v. Sw. Airlines Co.*, No 19-732, 2020 WL 6781754, at *4 (D.N.M. Nov. 18, 2020).

[67] *See McInerney v. United Air Lines, Inc.*, 463 F. App'x 709, 716 (10th Cir. 2011) ("Termination of employment is 'clearly an adverse employment action.'" (quoting *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008))).

Finally, Plaintiff has adequately alleged circumstances giving rise to an inference of discrimination. Plaintiff explicitly alleges that Defendant placed him on LOA+ status and terminated his employment because of his religious beliefs. He informed Defendant of his religious beliefs and requested an accommodation. And even though "[s]ecular employees with medical excuses [were allowed] not to take the vaccine,"[68] and were "provided accommodations from the vaccine mandate for secular reasons and not terminated,"[69] Plaintiff was placed on LOA+ status and terminated because of his refusal to comply with the vaccine requirement. Plaintiff further alleges that he was qualified for his position and had a strong employee record. The Court is mindful that it must not "'mandate the pleading of any specific facts in particular' for Title VII claims,"[70] and on this motion to dismiss, the Court must construe all reasonable inferences in favor of Plaintiff. Doing so, the Court finds that Plaintiff has adequately alleged circumstances that give rise to an inference of discrimination.

### b) Failure to Accommodate

Turning next to Plaintiff's failure-to-accommodate claim, to make out a prima facie case, Plaintiff must allege (1) "the employee has a bona fide religious belief that conflicts with a job requirement," (2) "the employee informed the employer of this conflict," and (3) "the employer fired the employee for failing to comply with the job requirement."[71] Plaintiff alleges that he "holds a sincere religious belief that precludes him from consenting to a Covid-19 vaccine." He

---

[68] Doc. 1 ¶ 209.

[69] *Id.* ¶ 167.

[70] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1139 n.13 (10th Cir. 2024) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1188 (10th Cir. 2012)).

[71] *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018) (citing *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000)).

also alleges that he informed Defendant of his religious objection to the vaccine mandate and in return, Defendant placed him on LOA+ and later terminated him.

Defendant counters that Plaintiff has not plead a bona fide religious belief or an adverse employment action for failure to comply with the vaccine mandate. First, Defendant argues that Plaintiff has not alleged a bona fide religious belief because he "fails to tie his beliefs as a Christian to the vaccination policy in any tangible way,"[72] and does not show a link between his religious belief and his objection to a vaccine developed with aborted fetal cell lines. But Defendant omits from its brief a key phrase from the Complaint: "Abortion is wrong. *As a Christian*, I believe it is immoral . . . to base . . . employment on receiving a medication derived from abortion."[73] At this stage, Plaintiff is not required to plead facts that state a full theological position on exactly how use of a vaccine developed with aborted fetal cell lines would violate his Christian beliefs.[74] It is "well-established . . . that 'we do not mandate the pleading of any specific facts in particular' for Title VII claims."[75] Because Plaintiff alleged that his opposition to the vaccine derives from his Christian beliefs, the Court finds that Plaintiff has sufficiently alleged a bona fide religious belief.

Defendant next argues that Plaintiff has not sufficiently plead an adverse employment action because an offered accommodation—here, placement on LOA+—cannot also serve as the adverse employment action. As discussed above, Plaintiff alleges two adverse employment actions: being placed on LOA+ status and termination in November 2022. Even assuming that

---

[72] Doc. 8 at 11.

[73] Doc. 1 ¶ 138 (emphasis added).

[74] *See McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1141 (10th Cir. 2024) (finding that Plaintiff stated a religious discrimination claim where Plaintiff alleged "[Plaintiff] is a Christian man" and his belief was that "[a]s a [C]hristian . . . the love that Jesus can provide will help the play").

[75] *Id.* at 1139 n.13 (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1188 (10th Cir. 2012)).

Defendant is correct that the accommodation cannot serves as the required adverse employment action, Plaintiff alleges that his termination in November 2022 is also an adverse employment action, which supports his failure to accommodate claim.  Admittedly, he alleges many reasons for his termination, but one of those reasons is "his refusal of the medical treatment status [that is, the vaccine requirement]."[76]  Looking only to Plaintiff's Complaint, as is required at this stage of litigation, the Court concludes that Plaintiff has sufficiently alleged that his employment was terminated for failure to comply with the vaccine mandate.[77]

### c) Retaliation

To make out a prima facie case for retaliation, Plaintiff must allege "(1) that [Plaintiff] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[78]  Plaintiff alleges that he participated in the accommodation-request process, satisfying the first element.[79]  Plaintiff also alleges that Defendant terminated him, which satisfies the second element, because he participated in the accommodation-request process, satisfies the third element.

But Defendant argues that Plaintiff cannot satisfy the adverse-employment-action element because the offered accommodation—LOA+—cannot also serve as the adverse employment action.  Even if that is true, however, Plaintiff does not allege that LOA+ is the

---

[76] Doc. 1 ¶ 133.

[77] Defendant argues that Plaintiff cannot state a failure to accommodate because the discharge or discipline alleged cannot also be the accommodation offered to Plaintiff.  But because the Court reads the Complaint as alleged the termination—not LOA+ status—as the adverse employment action that satisfies the failure-to-accommodate claim, the Court declines to address that argument.

[78] *Id.* at 1142 (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)).

[79] Doc. 1 ¶ 234; *see Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1187–88 (10th Cir. 2016).

16

adverse action for the retaliation claim.[80]  Instead, Plaintiff alleges that his termination on November 2022 constituted the adverse action: "[Defendant] terminated the plaintiff as a result of his request for a religious exemption."[81]

Defendant next contends that Plaintiff cannot show causation because, according to Plaintiff's allegations, Defendant had predetermined—before Plaintiff requested an accommodation—that it would place Plaintiff on LOA+ if he requested an accommodation. Thus, because that decision preceded the accommodation request, the request could not have caused the adverse employment action associated with LOA+.  But again, the Court understands Plaintiff to allege two adverse employment actions: placement on LOA+ (and its concomitant loss of pay) and termination of his employment in November 2022.[82]  That termination happened after Plaintiff sought an accommodation.  Thus, contrary to Defendant's argument, the timing of the termination does not preclude it from being caused by Plaintiff's request for an exemption. The Court concludes that Plaintiff has met his burden at this early stage in the litigation to plead a prima facie case of retaliation.

The Court therefore finds that Plaintiff has adequately alleged prima facie claims of religious discrimination, failure to accommodate, and retaliation on the basis of religion under Title VII.

---

[80] The Court recognizes that the Complaint is not the picture of clarity on whether Plaintiff considers placement on LOA+ status to be termination of Plaintiff's employment.  He sometimes describes LOA+ status as "threatened . . . unpaid leave and termination."  Doc. 1 ¶ 237.  But drawing all reasonable inferences in Plaintiff's favor, the Court understands Plaintiff to contend that LOA+ contemplated *possible* termination after one year of unpaid leave but Defendant made the ultimate decision to terminate him in November 2022.  *See id.* ¶ 240; *see also* Doc. 10 at 5 ("Plaintiff immediately lost his position, placed [sic] on unpaid leave, and ultimately were [sic] terminated.").  The Court's conclusion is further bolstered by the fact that Defendant's letter placing him on LOA+ status did not terminate his employment; in fact, it noted that "[i]n the coming months, risks may be mitigated in other ways which may allow you to return to work.  If a return-to-work option becomes available, you will be notified."  Doc. 1 ¶ 137.

[81] Doc. 1 ¶ 240.

[82] *Id.*

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Leave to File Sur-Reply (Doc. 12) is **denied**. It is further order that Defendant's Motion to Dismiss (Doc. 7) is **granted in part and denied in part**. Defendant's motion is granted as to Count I, Count II, and Count VI. Defendant's motion to dismiss is otherwise denied.

**IT IS SO ORDERED.**

Dated: December 18, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE